Kraft Label

**Jones, Lewis**

From:      ARMFELT, MARK A [AG/1000] [mark.a.armfelt@monsanto.com]
Sent:      Thursday, June 19, 2008 7:24 PM
To:        Jones, Lewis
Subject:   RE: Kraft Label

```
┌─────────────────┐
│    EXHIBIT      │
│       20        │
└─────────────────┘
```

Thanks Lewis.

*Mark*

> **From:** Jones, Lewis [mailto:LJones@agri.ohio.gov]
> **Sent:** Thursday, June 19, 2008 4:03 PM
> **To:** ARMFELT, MARK A [AG/1000]
> **Subject:** RE: Kraft Label
>
> Mark:
>
> I not only have seen it, but I have an empty package in my files.  We have notified Kraft that this label is not in compliance with the labeling rule.
>
> Thanks Mark,
>
> **Lewis R. Jones at ODA**
> ljones@agri.ohio.gov
>
> **From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
> **Sent:** Thursday, June 19, 2008 3:59 PM
> **To:** Jones, Lewis
> **Subject:** Kraft Label
>
>
> Lewis,
>
> I was in Kroger's the other day and saw this labeled cheese. I thought it was out of compliance with your new rules. Have you seen it, what do you think?
>
> <<Kraft - 4 6-2008.jpg>>
>
> *Mark Armfelt, DVM, DABVP*
>
> Commercial Acceptance Lead, Dairy
>
> 3422 Martinsburg Road
>
> Gambier, Ohio 43022
>
> Office and Fax - (740) 668-2682
>
> Mobile - (740) 501-1532

7/11/2008

Kraft Label



*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

7/11/2008

ODA03378

APP.II 0523

## Hopper, Bill

| | |
|---|---|
| **From:** | ARMFELT, MARK A [AG/1000] [mark.a.armfelt@monsanto.com] |
| **Sent:** | Monday, April 21, 2008 8:57 AM |
| **To:** | Hopper, Bill |
| **Subject:** | FW: Several states have developed rules/standards on rbST labeling and advertising |
| **Importance:** | High |

Bill,

Thought this might be helpful.

*Mark*

-----Original Message-----
**From:** MORIN, KIMBERLY A [AG/1000]
**Sent:** Monday, April 21, 2008 6:42 AM
**To:** ARMFELT, MARK A [AG/1000]
**Cc:** LOWRY, BRIAN R [AG/1000]
**Subject:** Several states have developed rules/standards on rbST labeling and advertising
**Importance:** High

Mark – Please forward to Bill Hopper. I know you have been corresponding with him. A number
of states have developed rules/standards on rbST labeling and advertising. -- Kimberly

## VERMONT - 1998

http://www.leg.state.vt.us/docs/1998/acts/act154.htm

Sec. 1. 6 V.S.A. chapter 151, subchapter 5 is added to read: Subchapter 5. rbST Labeling

§ 2760. SUBSTANTIAL STATE INTEREST

(a) Role of state government. The Vermont general assembly finds, as does the U.S. Food and
Drug Administration, that the states under our federal system of government have traditionally
undertaken the role of overseeing milk production. The Vermont general assembly also finds that
the intent of the U.S. Food and Drug Administration is to rely primarily on state governments to
validate rbST labeling claims regarding milk and dairy products and to ensure that such claims
are truthful and not misleading.

## PENNSYLVANIA - 2008

http://www.agriculture.state.pa.us/agriculture/lib/agriculture/foodsafetyfiles/labeling/milk_labelir

Revised Standards and Procedure for the Approval of Proposed Labeling of Fluid Milk

Footnote 6: "Based on the FDA's intention to rely primarily on the enforcement activities of the

ODA03338
APP.II 0524

interested states to ensure that rBST labeling claims are truthful and not misleading, the number of differing standards that might exist in all fifty (50) states, and recognizing PDA's relevant authority...."

## WISCONSIN - 2004

http://www.legis.state.wi.us/rsb/code/atcp/atcp083.pdf
Chapter ATCP 83
DAIRY PRODUCT ADVERTISING AND LABELING

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

ODA03339

APP.II 0525

**Jones, Lewis**

| | |
|---|---|
| **From:** | ARMFELT, MARK A [AG/1000] [mark.a.armfelt@monsanto.com] |
| **Sent:** | Tuesday, April 15, 2008 9:05 AM |
| **To:** | Hopper, Bill |
| **Cc:** | Jones, Lewis |
| **Subject:** | RE: Europe & Canada |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | FAO WHO endorsement.pdf |

Bill,

My pleasure to respond, I am delighted someone is interested in the truth!

In response to your first questions, yes, that is how the EU endorsed the products as safe.

As I prepared for your hearing I checked with our regulatory people and the status of those endorsements have not changed.

I find it particularly interesting that Rick North and Michael Hansen repeatedly state that Codex Alimentarius has twice refused to endorse the safety of products from supplemented cows. In fact the WHO/FAO (of which Codex is a branch of) has twice confirmed the safety, first in 1993 and then again in 1998. The only thing Codex did, and it was twice, was refuse to set residue limits on the amount of bST allowed in milk, because they determined there was no need to. I have included the FAO/WHO endorsement for your review.

Let me know if you need anything else.

*Mark*

> -----Original Message-----
> **From:** Hopper, Bill [mailto:BHopper@agri.ohio.gov]
> **Sent:** Tuesday, April 15, 2008 8:39 AM
> **To:** ARMFELT, MARK A [AG/1000]
> **Cc:** Jones, Lewis
> **Subject:** RE: Europe & Canada
>
> Mark
>
> Thanks for the information.
>
> When the EU state in the 1993 report that they accept the scientific studies on Somatech and Optitlex, are they endorsing the products as safe?
>
> On the endorsements, they are dated as they surround the FDA approval timeframe. To your knowledge, have any of these comments been retracted or dismissed?
>
> Thanks again.  Bill

ODA03396
APP.II 0526

FW: Revised Rule

Bill Hopper
Chief Counsel
Ohio Department of Agriculture
(614) 728 5712

**From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
**Sent:** Tuesday, April 15, 2008 7:36 AM
**To:** Jones, Lewis; LOWRY, BRIAN R [AG/1000]
**Cc:** Hopper, Bill
**Subject:** RE: Europe & Canada

Lewis,

This is a common claim of some groups, I don't know if they really don't know or if they are twisting the facts to suit their agenda. According to the US Dairy Export Council dairy products from cows supplemented with rbST are NOT banned anywhere in the world.

To look a little deeper, there are really two parts to the approval process in countries that have looked at this, and not all have. One is the safety to humans from supplemented cows, and in fact that safety has been endorsed in over 50 countries, including the EU and in Canada. I have attached a world map that shows these countries, as well as countries where it is approved for use. While not all countries have independently looked at the safety of dairy products, none have banned dairy products from supplemented cows. This is very likely because safety has been confirmed by the AMA, ADA, FDA, WHO & FAO, NIH, Health Canada, and the Commission of European Communities among others. I submitted the safety endorsements from many of those organizations at the last hearing but am not sure I included Health Canada and the EU so I have attached them here. I also attached a statement from the Grocery Manufacturers of America that I thought was relevant to the current labeling discussion.

The second part of the approval process is related to use in lactating dairy cows. The EU and Canada have not approved its use in their cows, in large part due to the fact they both operate on heavily subsidized quota systems and did not want more milk produced in their countries. The following is a list of countries where rbST use in diary cattle is approved:

- Brazil
- Chile
- Colombia
- Costa Rica
- Ecuador
- El Salvador
- Guatemala
- Honduras
- Kenya
- Lebanon
- Mexico
- Pakistan
- Panama
- Peru
- South Africa
- South Korea
- United States

ODA03397

APP.II 0527

FW: Revised Rule

- Venezuela
- Zimbabwe

Does this answer your questions?

*Mark Armfelt, DVM, DABVP*
Dairy Technical Rep

3422 Martinsburg Road
Gambier, Ohio 43022

Office and Fax - (740) 668-2682
Mobile - (740) 501-1532

-----Original Message-----
**From:** Jones, Lewis [mailto:LJones@agri.ohio.gov]
**Sent:** Monday, April 14, 2008 5:06 PM
**To:** LOWRY, BRIAN R [AG/1000]; ARMFELT, MARK A [AG/1000]
**Cc:** Bill Hopper
**Subject:** Europe & Canada

Brian or Mark:

We have heard and read many statements about the use of rbST in dairy cattle being banned in parts of
Europe and Canada.
What is the current official status of the allowance for rbST use in Europe and Canada?

Lewis R. Jones

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*



ODA03398

APP.II 0528

## Hopper, Bill

| | |
|---|---|
| **From:** | Samy, Raji |
| **Sent:** | Wednesday, April 09, 2008 9:40 AM |
| **To:** | Hopper, Bill |
| **Subject:** | FW: Revised Rule |
| **Attachments:** | Commerce Clause.DOC; Organic and Preemption.DOC |

**From:** LOWRY, BRIAN R [AG/1000] [mailto:brian.r.lowry@monsanto.com]
**Posted At:** Tuesday, April 08, 2008 12:24 PM
**Posted To:** Legal
**Conversation:** Revised Rule
**Subject:** Revised Rule

Mr. Hopper:

Thank you for the opportunity to participate in the hearing and to provide these written comments, as well. Specific information regarding issues associated with the commerce clause and the National Organic Program are also attached.

With respect to organic foods, it has been suggested that the Ohio regulations are preempted by the Organic Food Production Act of 1990 ("the OFPA") (7 U.S.C. 6501, *et seq.*) and the regulations implementing that act. The suggestion is misplaced. The OFPA required the United States Department of Agriculture ("USDA") to develop and administer national standards for organically-produced agricultural products. In response, USDA has implemented the National Organic Program ("NOP") and a complex set of regulations detailing the methods, practices, and substances that can be used in producing and handling "organic" crops and livestock. Simply put, the NOP regulations require that agricultural products labeled as "organic" originate from farms or handling operations certified by a state or private entity that has been accredited by USDA. Products labeled "organic" must consist of at least 95% organically produced ingredients. Products labeled as "100% organic" must contain only organically produced ingredients and processing aids.

According to the NOP regulations, for a milk product to be labeled "organic," it generally must be derived from a cow that has not received growth promoters or hormones for at least one year immediately prior to the sale of such milk (7 CFR § 205.238(c)(3)). In crafting the NOP program, USDA initially considered listing, and thus regulating, "specific" terms and phrases -- such as "raised without hormones" -- that directly or indirectly implied that a product was produced organically (62 Fed. Reg. 65877, 65898-99 (December 16, 1997)). After soliciting public comment on such an approach, USDA proposed to authorize and regulate only "the term, 'organic,' *and no other term*" (65 Fed Reg. 13512, 13557 (March 13, 2000)) (emphasis added). Upon issuing the final version of the NOP

ODA03340
APP.II 0529

regulations, USDA held to this conclusion and emphasized that in restricting the use of the term "organic" the regulations were intended to assure that phrases and terms similar to "organic" would not be used "in a way that misleads consumers." 65 Fed. Reg. 80548, 80580 (December 21, 2000).

Our comments recommended that there be some administrative alterations to the Rule to ensure it is not inadvertently read or understood to be overly broad and to ensure specificity, clarity, compliance with federal and state law and readability. The specific alterations are as follows:

. . .

(2) The label contains, in the same label panel, in exactly the same font, style, case,

and color and at least half the size but no smaller than 8 point font without compression

as the foregoing representation, the following contiguous additional statement (or a

substantially equivalent statement): "The FDA has determined that no significant

difference has been shown between milk derived from rbST-supplemented and

non-rbST-supplemented cows."

(C) Making claims regarding the composition of milk with respect to hormones, as

opposed to the manner in which milk is produced, such as "No Hormones",

"Hormone Free", "rbST Free", "rbGH Free", "No Artificial Hormones" and "bST Free"

are false and misleading. ODA will not permit such statements on any dairy product labels.

(D) Statements may be considered to be false or misleading if they indicate the absence

of a compound not permitted by the United States Food and Drug Administration to

be present in any dairy product, including, but not limited to antibiotics or

ODA03341

APP.II 0530

pesticides. Accurate production claims not subject to paragraph B of this Rule will not be

deemed false or misleading.

(E) All dairy product labels must meet the requirements of this rule no later than one

hundred twenty days after its effective date.

(F) The provisions of this Rule shall not apply to label language, seals, marks or other designations properly

the subject of, and specifically authorized by a federal or Ohio statute, rule, program order or

regulation.


Should you have concerns, questions or require additional information with respect to a number of other issues raised in the hearing such as scientific quandaries; allegations against or mischaracterizations of the positions of the Federal Trade Commission and the Food and Drug Administration; Inspector General and General Accounting Office investigations and reports or the referenced article in *Vanity Fair,* please know that Monsanto would be pleased to respond.

If you have any questions, please do not hesitate to contact me by telephone or electronic mail.


<<Commerce Clause.DOC>>     <<Organic and Preemption.DOC>>


Regards,

Brian Robert Lowry

Deputy General Counsel

Monsanto Company

314.694.2872 - office

314.422.8398 - mobile


ODA03342
APP.II 0531

7/11/2008

Revised Rule                                                    Page 4 of 4

**314.694.1622 - facsimile**

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

## STATE LAWS OR REGULATIONS THAT ADVANCE TRUTHFUL AND NON-MISLEADING FOOD LABELING DO NOT VIOLATE THE COMMERCE CLAUSE OF THE U.S. CONSTITUTION

Article I, Section 8, Clause 3 of the U.S. Constitution houses the "Commerce Clause." The Commerce Clause provides that the United States Congress has the exclusive authority to manage trade activities between the states.[1] A state law or regulation designed to encourage the truthful and non-misleading labeling of food does not violate the Commerce Clause.[2] In fact, any attempt to proscribe the use of truthful and non-misleading food labeling would raise serious constitutional concerns under the First Amendment.

In evaluating alleged state violations of the Commerce Clause, courts employ a two "prong" inquiry. Courts first determine whether the state law or regulation has the purpose *or* effect of discriminating against foods that travel in interstate commerce. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471 n.15 (1981). If a discriminatory purpose or effect is discovered, such as in the case of economic protectionism, courts apply a "virtually *per se* rule of invalidity" to the state action. *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). Statutes or rules that seek to promote local economic interests to the detriment of out-of-state products fall within the *per se* rule. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) (state statute raising the costs of out-of-state apple producers was invalid on the basis of its discriminatory purpose). Under these prevailing standards, no inherent or obvious discriminatory purpose is presented by a law or regulation designed to foster truthful and non-misleading food labeling.[3]

The second prong of judicial analysis under the Commerce Clause comes into play only when no discriminatory purpose or effect can be established. Where the state "regulates evenhandedly to effectuate a legitimate local public interest," courts must balance the incidental burdens on interstate commerce created by the statute or rule against the advantages accruing to the state. If the burden on interstate commerce "is clearly excessive in relation to the putative state benefits," the law or regulation is invalid. Conversely, if a substantial benefit is obtained at the expense of a slight burden on interstate commerce, the law or regulation will be upheld. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). To this end, it is noteworthy that truthful and non-misleading food labeling is the ultimate goal of the food labeling provisions of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343. It follows that labeling consistent with that goal and those provisions cannot reasonably be viewed as burdening, even slightly, interstate commerce.

---

[1] The Commerce Clause also vests Congress with exclusive authority to regulate trade activities between foreign nations and Indian tribes.

[2] The Tenth Amendment provides that the federal government has only the powers delegated to it by the Constitution. Other powers are reserved to the states.

[3] In determining the purpose of a statute, it is proper to look to the practical operation and enforcement of the law in order to divine its real purpose. *Lewis v. BT Investment Managers*, 447 U.S. 27, 37 (1980). And, in making such a determination, a court is free to disregard a legislative statement of purpose for a given statute if it considers the statement to be merely a pretext. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. at 476 n.2.

ODA03344

APP.II 0533

## OHIO EMERGENCY REGULATIONS ON DAIRY LABELING
## ARE NOT PREEMPTED BY FEDERAL "ORGANIC" INITIATIVES

In response to deceptive milk labeling practices that have misled consumers about the quality, safety, and value of milk and milk products from cows supplemented with recombinant bovine somatotropin ("rBST"), Ohio has implemented emergency regulations designed to ensure that Ohio's citizens have complete and accurate information with which to make choices about the milk and milk products they purchase. Key to the regulations is that when labeling informs consumers that milk has been produced without the use of rBST, labeling must also inform that the United States Food and Drug Administration has determined that there is no significant difference between milk produced from cows supplemented with rBST and milk produced from cows not so supplemented. The regulations provide that this qualifying language be as prominent as the representation itself. Moreover, the regulations deem that claims like "no hormone," "hormone free," "rBST free," "rBGH free," and "BST free" to be "false and misleading" and, thus, not appropriate to appear on dairy product labels.

It has been suggested that the Ohio regulations are preempted by the Organic Food Production Act of 1990 ("the OFPA") (7 U.S.C. 6501, *et seq.*) and the regulations implementing that act. The suggestion is misplaced. The OFPA required the United States Department of Agriculture ("USDA") to develop and administer national standards for organically-produced agricultural products. In response, USDA has implemented the National Organic Program ("NOP") and a complex set of regulations detailing the methods, practices, and substances that can be used in producing and handling "organic" crops and livestock. Simply put, the NOP regulations require that agricultural products labeled as "organic" originate from farms or handling operations certified by a state or private entity that has been accredited by USDA. Products labeled "organic" must consist of at least 95% organically produced ingredients. Products labeled as "100% organic" must contain only organically produced ingredients and processing aids.

According to the NOP regulations, for a milk product to be labeled "organic," it generally must be derived from a cow that has not received growth promoters or hormones for at least one year immediately prior to the sale of such milk (7 CFR § 205.238(c)(3)). In crafting the NOP program, USDA initially considered listing, and thus regulating, "specific" terms and phrases -- such as "raised without hormones" -- that directly or indirectly implied that a product was produced organically (62 Fed. Reg. 65877, 65898-99 (December 16, 1997)). After soliciting public comment on such an approach, USDA proposed to authorize and regulate only "the term, 'organic,' *and no other term*" (65 Fed Reg. 13512, 13557 (March 13, 2000)) (emphasis added). Upon issuing the final version of the NOP regulations, USDA held to this conclusion and emphasized that in restricting the use of the term "organic" the regulations were intended to assure that phrases and terms similar to "organic" would not be used "in a way that misleads consumers." 65 Fed. Reg. 80548, 80580 (December 21, 2000).

ODA03345

APP.II 0534

Under the Supremacy Clause of the Constitution, there are two basic types of preemption – express and implied. In the case of express preemption, Congress is empowered to preempt state law by stating its intent to do so in express terms. Thus, federal agencies acting within the scope of their lawful authority can expressly preempt state law. Neither the OFPA nor the NOP regulations contain any provisions that expressly preempt Ohio's regulations.

Under the doctrine of implied preemption, a state statute, regulation, or right of action will be deemed preempted when it is in "direct conflict" with the federal or when it "stands as an obstacle" to accomplishment of the federal objectives or when the federal regulatory scheme is so comprehensive as to "occupy the field." *Hillsborough County Florida v. Automated Laboratories, Inc.*, 471 U.S. 707, 716-719 (1985). A direct conflict exists when compliance with both state and federal law is a "physical impossibility." *Hillsborough* at 713. Thus, for example, a direct conflict occurs when compliance with the state requirement would unavoidably place a product in violation of the federal law. *Grocery Manufacturers of America, Inc. v. Gerace*, 755 F.2d 993 (2nd Cir. 1985), *aff'd*, 474 U.S. 801 (1985). No such direct conflict exists between the OFPA and the NOP regulations and Ohio's regulations -- that is, a product can at the same time bear the appellation "organic" as prescribed by the NOP regulations and be labeled in compliance with Ohio's regulations.   In fact, the NOP regulations and the Ohio regulations share the common goal that terms and phrases on product labeling must not mislead consumers.

Before finding preemption on the basis that the state law or regulation "stands as an obstacle" to the accomplishment of federal objectives, courts carefully determine the purpose of the federal program and then evaluate whether as a matter of fact the state program operates to undermine the federal. *Jones v. Rath Packing Co.*, 430 U.S. 519, 540-544 (1977). The OFPA was created to: (1) establish national standards governing the marketing of certain agricultural products as organically produced; (2) assure consumers that organically produced products meet a consistent standard; and (3) facilitate commerce and fresh and processed food that is organically produced. 7 U.S.C. § 6501. None of these purposes is threatened by Ohio's regulations:  the regulations do not in any way relate to the use of the appellation "organic;" the regulations do not at all address, much less attempt to govern standards for the production of "organic" products; and the regulations do not hamper the commerce of products covered by the OFPA or the NOP regulations -- products properly labeled "organic."

Whether a federal regulatory scheme "occupies the field" and, thus, leaves no room for a supplementary state regulation depends on whether the federal interest is so dominant that it would be assumed to preclude state laws on the same subject. In the area of health and safety regulation, the Supreme Court starts with the presumption that local regulation of matters related to health and safety is not preempted. *Hillsborough* at 715. In the unusual case where a federal scheme has been found to "occupy the field," the preemption analysis is based on a narrow definition of the field of regulation (*see, e.g., CTFA v. Minnesota*, 440 F. Supp. 1216 (D. Minn. 1977), *aff'd*, 575 F.2d 1256 (8th Cir. 1978) where, in preempting a

2

ODA03346

APP.II 0535

state ozone deterioration warning requirement, the field of federal regulation was defined as involving only ozone deterioration warnings; *see also Jones v. Rath Packing*, *supra*).  If the OFPA and its implementing regulations occupy the field of product labeling, they do so only with respect to the actual usage of the term "organic" – a term the use of which is by no means addressed, much less governed, by Ohio's regulations.

3

ODA03347

APP.II 0536

Thanks and question

**Jones, Lewis**



| | |
|---|---|
| **From:** | ARMFELT, MARK A [AG/1000] [mark.a.armfelt@monsanto.com] |
| **Sent:** | Thursday, March 13, 2008 3:51 PM |
| **To:** | Jones, Lewis |
| **Subject:** | Thanks and question |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Lewis,

Thanks to you and the department for the professional job you did running the hearing yesterday.

I do have a question, do you have any estimated timeline as to when the director will make a decision?

*Mark Armfelt, DVM, DABVP*

Dairy Technical Rep

3422 Martinsburg Road

Gambier, Ohio 43022

ce and Fax - (740) 668-2682

Mobile - (740) 501-1532

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

ODA03405

APP.II 0537

**Jones, Lewis**

| | |
|---|---|
| **From:** | ARMFELT, MARK A [AG/1000] [mark.a.armfelt@monsanto.com] |
| **Sent:** | Friday, February 08, 2008 8:18 AM |
| **To:** | Jones, Lewis; Bernie Heisner; Bonnie Ayars ; Chuck Jamison ; Connie Finton; Dave White; Dr. Cameron Thraen; Dr. Jim Kinder ; Dr. Larry Smith; Dr. Maurice Eastridge; Dr. Normand St-Pierre; Dr. Valente Alvarez; Ed Pfeifer; Glenn Wallace; Kristin Mullins; Neal Linebaugh; Phil Krueger; Scott Higgins; Shawn Althauser ; Tom Fleming; Tom Jackson |
| **Subject:** | RE: ODA Dairy Labeling |

Nice work Lewis, thanks for all of your efforts, and thanks to all of you that have supported the effort and given your time to attend the hearings.

I have attached a recent "Samuelson Sez" on this topic.

*Mark*

-----Original Message-----
**From:** Jones, Lewis [mailto:LJones@agri.ohio.gov]
**Sent:** Thursday, February 07, 2008 2:09 PM
**To:** Bernie Heisner; Bonnie Ayars ; JAMISON, CHARLES A [AG/1000]; Connie Finton; Dave White; Dr. Cameron Thraen; Dr. Jim Kinder ; Dr. Larry Smith; ARMFELT, MARK A [AG/1000]; Dr. Maurice Eastridge; Dr. Normand St-Pierre; Dr. Valente Alvarez; Ed Pfeifer; Glenn Wallace; Kristin Mullins; Neal Linebaugh; Phil Krueger; Scott Higgins; Shawn Althauser ; Tom Fleming; Tom Jackson
**Subject:** ODA Dairy Labeling

Lewis R. Jones at ODA
ljones@agri.ohio.gov

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

ODA03427
APP.II 0538

PAFB                                                                                      Page 1 of 1



**Jones, Lewis**

**From:**     Jones, Lewis
**Sent:**     Wednesday, December 26, 2007 1:28 PM
**To:**       'ARMFELT, MARK A [AG/1000]'
**Subject:** RE: PAFB

Because I was happy to finally get twenty in-laws out of my house.

Lewis R. Jones at ODA
ljones@agri.ohio.gov

**From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
**Sent:** Wednesday, December 26, 2007 1:16 PM
**To:** Jones, Lewis
**Subject:** RE: PAFB

Amen, nice piece, actually sounds reasonable, thanks for sending it.

The bigger question is, what were you doing looking at this stuff Christmas night at 11:26? Won't it be nice when this is behind us?

Thanks again for your leadership on this issue.

*ark*

*"In the end we will remember not the words of our enemies, but the silence of our friends."*
*Martin Luther King Jr.*

> -----Original Message-----
> **From:** Jones, Lewis [mailto:LJones@agri.ohio.gov]
> **Sent:** Tuesday, December 25, 2007 11:26 PM
> **To:** Neal Linebaugh; Bernie Heisner; Randy Arbaugh; ARMFELT, MARK A [AG/1000]; Larry Smith; JAMISON, CHARLES A [AG/1000]; Tom Fleming; Valente Alvarez; Normand St.Pierre; Dr. Cameron Thraen; Dr. Maurice Eastridge; Connie Finton; Scott Higgins; Shawn Althauser ; Phil Krueger; Tom Jackson ; Ed Pfeifer; Dave White; Glenn Wallace; Kristin Mullins
> **Subject:** PAFB
>
> http://www.pafarmnews.com:80/Articles/2007/071225_PFB_foodlabels.htm

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

7/11/2008

ODA03594
APP.II 0539

**Jones, Lewis**

**From:** Jones, Lewis
**Sent:** Thursday, November 01, 2007 3:07 PM
**To:** 'ARMFELT, MARK A [AG/1000]'
**Subject:** RE: Dairy Labeling Meeting Notice

Stanley Carmony, Wayne County producer, will be #4. Perhaps he and John should compare notes before Tuesday. Stanley's phone numbers are: 330-345-9105 or 330-621-1354 (cell). A total of 8 panelist will be given 7 minutes each.

I will email the agenda including all names tomorrow.

Lewis R. Jones at ODA
ljones@agri.ohio.gov

**From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
**Sent:** Wednesday, October 31, 2007 10:48 PM
**To:** Jones, Lewis
**Subject:** RE: Dairy Labeling Meeting Notice

Lewis,
Here are the people we talked about participating in your meeting on Tuesday:
1.   Rich Meiring - cell phone 937-243-3381
2.   John Douglass – cell (330) 465-5334
3.   Normand St-Pierre – cell (410) 251-0616
Let me know if you need anything else.
*Mark Annfelt, DVM, DABVP*
Monsanto Dairy, Technical Services Specialist
3422 Martinsburg Road
Gambier, OH 43022
Office - 740-668-2682
Fax -    740-668-2682
Mobile - 740-501-1532
*"In the end we will remember not the words of our enemies, but the silence of our friends."*
*Martin Luther King Jr.*

-----Original Message-----
**From:** Jones, Lewis [mailto:LJones@agri.ohio.gov]
**Sent:** Friday, October 26, 2007 1:54 PM
**To:** Bernie Heisner; JAMISON, CHARLES A [AG/1000]; Connie Finton; Dr. Cameron Thraen; Dr. Maurice Eastridge; Ed Pfeifer; Glenn Wallace; Kristin Mullins; ARMFELT, MARK A [AG/1000]; Neal Linebaugh; Phil Krueger; Scott Higgins; Shawn Althauser ; Tom Fleming; Tom Jackson ; Valente Alvarez
**Cc:** Connie Ellis ; Ward, Adam; Director Robert Boggs ; Charles Twining ; Roger Tedrick; Wise, Brian
**Subject:** Dairy Labeling Meeting Notice

Ohio Department of Agriculture Director Robert Boggs is calling a meeting to discuss dairy product labeling issues. The meeting will be held on Tuesday, November 6, 2007 at 1:00 p.m. in the ODA Bromfield Administration Building, Reynoldsburg. Please advise those persons you represent; however, space will be limited to Seminar Room A (the auditorium will not be available).

ODA03582

APP.II 0540

Due to the timing, notices for this meeting will not be mailed.

Lewis R. Jones, R.S.
Chief, Dairy Division
Ohio Department of Agriculture
Phone (614) 644-8621
Email ljones@agri.ohio.gov

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto, including its subsidiaries. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto, along with its subsidiaries, accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

7/11/2008

**Jones, Lewis**

| | |
|---|---|
| **From:** | Lewis R. Jones [ljones@agri.ohio.gov] |
| **Sent:** | Monday, September 10, 2007 9:07 AM |
| **To:** | 'ARMFELT, MARK A [AG/1000]' |
| **Subject:** | RE: Dr. Lormore |

Mark:

Call me at 614-580-0031

Lewis R. Jones at ODA
ljones@agri.ohio.gov

**From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
**Sent:** Sunday, September 09, 2007 12:57 PM
**To:** Lewis R. Jones
**Subject:** RE: Dr. Lormore

Lewis,

I will likely see Mike tomorrow in St. Louis. Originally the group had some concern that the speaker be non-Monsanto, do you think this is still an issue?

*Mark*

*"In the end we will remember not the words of our enemies, but the silence of our friends." Martin Luther King Jr.*

-----Original Message-----
**From:** Lewis R. Jones [mailto:ljones@agri.ohio.gov]
**Sent:** Wednesday, September 05, 2007 11:27 AM
**To:** ARMFELT, MARK A [AG/1000]
**Cc:** Ken White
**Subject:** Dr. Lormore

I left Mike Lormore a phone message.  Do you think we can get him to speak at the Dairy Quality Conference on such short notice?

**Lewis R. Jones, R.S.**
Chief, Dairy Division
Ohio Department of Agriculture
8995 E. Main Street
Reynoldsburg, OH  43068-3399
Phone (614) 644-8621
Fax  (614) 728-2652
Email ljones@agri.ohio.gov

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

7/11/2008

ODA03581

APP.II 0542

**Jones, Lewis**

**From:**     Lewis R. Jones [ljones@mail.agri.state.oh.us]
**Sent:**     Wednesday, May 16, 2007 8:00 AM
**To:**       'ARMFELT, MARK A [AG/1000]'
**Subject:**  RE: FYI - Dairy Division of NASDA, July 10, 2007

Dr. Mark:

Yes, you are welcome to attend.  If you want to come just for the afternoon program, you may do so without registration cost.

LRJ at ODA

**From:** ARMFELT, MARK A [AG/1000] [mailto:mark.a.armfelt@monsanto.com]
**Sent:** Wednesday, May 16, 2007 7:36 AM
**To:** Lewis R. Jones
**Subject:** RE: FYI - Dairy Division of NASDA, July 10, 2007

Thanks for the heads up Lewis, I think you will enjoy Mike's presentation, is this something I could attend if my schedule allowed?

*Mark*

-----Original Message-----
**From:** Lewis R. Jones [mailto:ljones@mail.agri.state.oh.us]
**Sent:** Tuesday, May 15, 2007 8:20 AM
**To:** ARMFELT, MARK A [AG/1000]
**Subject:** FYI - Dairy Division of NASDA, July 10, 2007

Dr. Mark:

Dave Tierney called me a couple weeks ago with a request to address the group.

LRJ at ODA

**From:** TIERNEY, DAVE [AG/2001] [mailto:dave.tierney@monsanto.com]
**Sent:** Monday, May 14, 2007 6:11 PM
**To:** Lewis R. Jones
**Subject:** RE: Dairy Division of NASDA

Lewis,

Here is the Monsanto person that will speak at the mtg:

Dr. Mike Lormore
Director, Industry Affairs
Monsanto Company
Animal Agriculture Group

Thanks again and please let me know if you have any questions.

Dave

ODA03574

APP.II 0543

-----Original Message-----
From: Lewis R. Jones [mailto:ljones@mail.agri.state.oh.us]
Sent: Wednesday, May 02, 2007 8:57 AM
To: TIERNEY, DAVE [AG/2001]
Subject: FW: Dairy Division of NASDA


**Lewis R. Jones, R.S.**
**Chief, Dairy Division**
**Ohio Department of Agriculture**
**(614) 644-8621**

From: Lewis R. Jones [mailto:ljones@mail.agri.state.oh.us]
Sent: Wednesday, May 02, 2007 9:44 AM
To: 'Dave.tierney@monsanto.com'
Subject: Dairy Division of NASDA

Dave:

Thanks for the timely call.  I will be waiting for more information on the Monsanto speaker.


**Lewis R. Jones, R.S.**
Chief, Dairy Division
Ohio Department of Agriculture
8995 E. Main Street
Reynoldsburg, OH  43068-3399
Phone (614) 644-8621
Fax    (614) 728-2652
Email ljones@mail.agri.state.oh.us

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*

*This e-mail message may contain privileged and/or confidential information, and is intended to be received only by persons entitled to receive such information. If you have received this e-mail in error, please notify the sender immediately. Please delete it and all attachments from any servers, hard drives or any other media. Other use of this e-mail by you is strictly prohibited.*

*All e-mails and attachments sent and received are subject to monitoring, reading and archival by Monsanto. The recipient of this e-mail is solely responsible for checking for the presence of "Viruses" or other "Malware". Monsanto accepts no liability for any damage caused by any such code transmitted by or accompanying this e-mail or any attachment.*