UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL DAIRY FOODS ASSOCIATION, | Case Nos. 2:08-CV-628, -629 (consolidated) |
| and | JUDGE GRAHAM |
| ORGANIC TRADE ASSOCIATION, | |
| Plaintiffs, | **REPLY OF DFEFENDANT IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ROBERT J. BOGGS, Director, Ohio Department of Agriculture, | |
| Defendant. | |

## I. INTRODUCTION

On their First Amendment claim, Plaintiffs' reliance on the *Ibanez* case is misplaced, because that case is based on materially different facts and deals only with restrictions on commercial speech. The decision is irrelevant for reviewing mandatory disclosure requirements. *Ibanez* does not alter the application of *Zauderer* and *Sorrell* to compelled-speech regulations. Also, unlike this case, *Ibanez* involved truthful claims that did not mislead others.

Plaintiffs' dormant Commerce Clause arguments are essentially identical to their summary judgment arguments. Accordingly, the Director replies by incorporating by reference part IV.B. of his memorandum in support of his motion for summary judgment (Doc. 36).

The Rule under attack is not preempted because it does not stand as an obstacle to the congressional purposes and objectives behind the Organic Food Production Act ("OFPA"). The Rule in no way restricts organic producers' and sellers' use of the "organic" label on dairy products or prevents them from informing consumers about what materials are used in organic production. Further, Plaintiff Organic Trade Association ("OTA") does not cite anything in the OFPA or national Organic Program ("NOP") regulatory scheme to show there is no room for States to exercise their traditional police powers to prohibit false and misleading labeling. Unlike the federal Tobacco Inspection Act addressed in *Campbell v. Hussey*, the OFPA regulatory scheme is not so sweeping as to leave no room for States to regulate dairy labeling.

Finally, the Rule uses the word "may" in conjunction with the words "unless" and "if" to indicate that certain label claims will be considered false and misleading unless conditions specified thereafter in the Rule are met. This construction avoids any constitutional problem. To the extent there is any ambiguity in these provisions, this Court should defer to the Department's reasonable interpretation of its own rule. Director Boggs's deposition testimony does not suggest an opportunity for selective enforcement, but simply that he, as Director, is empowered to enforce the Rule.

Accordingly, the Director's motion for summary judgment should be granted, and Plaintiffs' motions for summary judgment should be denied.

## II. ARGUMENT

### A. Both the composition claim provisions of the Rule and the production claim provisions of the Rule comply with the First Amendment pursuant to the applicable standard of review.

Rather than reiterate the legal argument already presented in the Director's Memorandum in Support of his Motion for Summary Judgment, the following discussion responds to the central First Amendment argument advanced by both Plaintiffs in response to the Director's motion for summary judgment, to wit: that both the production claim provisions and the composition claim provisions of the Rule are invalid on the basis of the Supreme Court's decision in *Ibanez v. Fla. Dep't of Bus. & Prof. Regulation*, 512 U.S. 136 (1994). As explained below, Plaintiffs' reliance upon *Ibanez* is entirely misplaced.

Ibanez was a Florida attorney who was also licensed as a certified public accountant ("CPA") by the Florida Board of Accountancy, and as a certified financial planner ("CFP") by a private certifying organization. She included references to her CPA and CFP credentials in advertising, including her "attorney" listing in the Yellow Pages. As a result of these advertisements, the accountancy board reprimanded Ibanez for "false, deceptive, and misleading" advertising.

In striking down this reprimand, the Supreme Court held that the accountancy board was mistaken in finding the use of the designation "CPA" to be false or misleading. The board had relied upon the argument that the designation advised the public that the attorney was subject to the Florida Accountancy Act when she "believes and acts" as if she were not. However, the Court noted that Ibanez no longer contested the Board's jurisdiction over her, and that her "belief" was not relevant anyway. As for the "CFP"

designation, the Court found that the truthful reference to her certification as a certified financial planner was not inherently misleading.

Despite giving *Ibanez* nothing more than a fleeting reference in their initial briefs filed in support of their motions for summary judgment, Plaintiffs now contend that decision is on "all fours" with the facts of this case and "demolishes" the Director's argument. In so arguing, Plaintiffs profoundly misconstrue and misapply the *Ibanez* decision.

First, with regard to the Rule's requirement that the FDA disclaimer language accompany production claims regarding the non-use of rBST, the appropriate standard of review remains the "reasonableness" standard employed the Supreme Court in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985). As thoroughly explained in the Director's memorandum (Doc. 36), the *Zauderer* reasonableness standard applies to that portion of the Rule which mandates the inclusion of truthful information on the label to keep production claims from being misleading. It is to this portion, *and only this portion*, of the Rule that the reasonableness standard applies. *Zauderer* considered both mandatory disclosure requirements (relevant to the Rule's production claim requirements in this case) and also restrictions on commercial speech (*not* relevant to the production claims). By contrast, *Ibanez* deals only with restrictions on commercial speech, and is of no relevance whatever with regard to the review of mandatory disclosure requirements. Contrary to Plaintiffs' assertions, *Ibanez* does not expressly or implicitly alter the application of the *Zauderer* reasonableness standard for compelled speech regulations.

In the same manner, *Ibanez* in no way undercuts or contradicts the relevance of the decision of the United States Court of Appeals for the Second Circuit in *National*

*Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001), upon which the Director also relies. *Sorrell* upheld a Vermont statute which mandated disclosure of the mercury content of mercury-containing light bulbs and directions as to hazardous waste disposal. Rejecting a First Amendment challenge to the law, the court noted that "mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests." *Id.* at 114.

Unlike the *Ibanez* case, *Sorrell* deals with a disclosure requirement similar to the production claim requirements of the Rule. Accordingly, *Sorrell* is pertinent to the review of the Rule's mandatory disclosure requirements, while *Ibanez* is not. Acknowledging that *Sorrell* does not refer to the earlier *Ibanez* decision, IDFA speculates that perhaps the *Sorrell* court was simply "unaware" of *Ibanez*. (IDFA Reply p.17) A far more likely explanation is that the *Sorrell* court understood a fact which Plaintiffs have overlooked -- that *Ibanez* was simply irrelevant.

With regard to the remaining portion of the Rule, i.e., the portion restricting certain false or misleading composition claims, Plaintiffs likewise misapply *Ibanez*. While *Ibanez* at least addresses the same subject matter on this issue -- namely, restriction of certain commercial speech claims, as opposed to mandatory disclosure -- the facts of *Ibanez* are easily distinguishable from the facts of this case, and therefore the *Ibanez* decision is not controlling as to the outcome of this case.

More specifically, the facts in *Ibanez* differ from the facts in this case in at least three important respects:

(1) Some of the composition claims prohibited by the Rule, such as "hormone free" or "no hormones," are not merely misleading, but flatly false. Milk cannot be produced without hormones, and all milk contains natural hormones. By contrast, the "CPA" and "CFP" claims considered in *Ibanez* were true.

(2) Other composition claims prohibited in the Rule, such as "no antibiotics" and "no pesticides," are inherently misleading in a way in which Ibanez's claims were not. As previously explained by the Director, antibiotics and pesticides are banned from *all* milk, regardless of whether the milk is organic or inorganic, or whether the milk was produced with or without rBST supplementation. Even if true, such claims are nevertheless misleading because they create a false impression that dairy products not labeled in such a fashion might contain antibiotics or pesticides. There is no parallel to this misleading impact anywhere in *Ibanez*. Any Florida attorney might also have been certified as a CPA or CFP. The fact that Ibanez used these credentials in her advertising did not imply anything misleading about her fellow attorneys, accountants, or financial planners. Given this fact, it is not surprising that the Court found nothing misleading in Ibanez's truthful use of these certifications in her advertising. That outcome, however, is of no relevance to the misleading composition claims addressed in the Rule.

(3) Finally, composition claims such as "rBST free" are materially different from the claims allowed in *Ibanez* because they cannot be directly verified through testing. Whereas Ibanez's claim to the title of "CPA" and "CFP" could be simply and directly verified, the presence or absence of rBST in milk cannot be verified under any existing, available technology. Plaintiffs point out that milk produced without rBST cannot result in milk which contains rBST, but this argument misses a central point.

6

Production claims differ from composition claims in that the former are (reasonably) verifiable, while the latter are not. Untestable composition claims are inherently misleading because they create the false impression that they can be tested and verified as accurate. The issue is not whether a particular producer's product might or might not contain rBST, but whether the allowance of such composition claims on dairy products in Ohio creates an unacceptable risk of misleading consumers. This is the reasonable, and lawful, basis for the Rule's restraint of such claims.

Both Plaintiffs dispute that a claim can even be "inherently misleading," and rely upon *Ibanez* for the proposition that the misleading nature of the claim must be separately established through such as evidence as consumer polls or consumer testimony. This argument stretches *Ibanez* far beyond its intended reach, and in a manner that other courts have declined to follow.

An excellent illustration of this point can be found in the Ohio Supreme Court decision in *In re Complaint against Judge Harper*, 77 Ohio St.3d 211 (1996). In *Harper*, the court considered disciplinary action against a sitting judge on the basis of a commercial used in the judge's campaign for a seat on the Ohio Supreme Court. The commercial in question made certain allegations regarding financial contributions to her opponent in the 1994 election. Asserting that the commercial's claims could not be deemed "misleading" in the absence of extrinsic evidence that people were in fact misled, Judge Harper relied specifically upon *Ibanez* for this proposition.

The *Harper* court found this reliance upon *Ibanez* to be misplaced:

> In rejecting the state's position, the Supreme Court [in *Ibanez*] noted that in the complete absence of any evidence of deception, concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment. . . . Moreover, in a footnote,

7

the court further observed that no witness had testified, nor had any evidence been offered, that any member of the public had been misled. . . . .

*We do not read these comments as requiring the state to offer evidence of public opinion polls, nor do we believe that the state must offer testimony from witnesses who claim to have been misled.* In reviewing *Ibanez*, the reason for the Supreme Court's statement is obvious. Given the innocuous nature of the initials "CFP," which have no objectively deceptive connotation, evidence that the public, in fact, was misled would have been helpful. However, no such difficulty presents itself in the case at hand, *since the language used is readily susceptible of interpretation by an objective observer without resort to proof from members of the public.*

*Harper*, 77 Ohio St.3d at 217 (emphases added; citations omitted).

Applying this reasoning to the present case, the issue is not how many consumers complained to the Director about misleading claims on dairy labels, but whether the composition claims are "readily susceptible of interpretation by an objective observer without resort to proof from members of the public." *Id.* Composition claims which are demonstrably false (example #1 above), which falsely imply that competing products might contain prohibited compounds such as pesticides or antibiotics (example #2), or which cannot be verified through any existing technology (example #3) are all susceptible of such objective interpretation, and do not require extrinsic evidence for support.

    **B.**    **For the reasons set forth in the Director's memorandum on summary judgment, the Rule does not violate the dormant Commerce Clause of the United States Constitution.**

Plaintiffs[1] assert the Rule violates the dormant Commerce Clause of the United States Constitution by (1) directly burdening interstate commerce; (2) discriminating against out-of-state dairy processors and producers; and (3) imposing burdens which

---

[1] OTA adopts IDFA's dormant Commerce Clause argument by reference.

outweigh the local benefits. In making this argument, Plaintiffs argue the Director's analysis "ignores relevant case law and important undisputed facts." (IDFA Reply p.24.)

Far from ignoring the pertinent case law on this issue, the Director has shown that the cases upon which Plaintiffs rely, including *Healy v. The Beer Institute*, 491 U.S. 324 (1989), and *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977), are inapposite to the facts of this case. Moreover, the Director has discussed *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), at length, and has shown that the "burden versus benefit" weighing test adopted in that case strongly supports the constitutionality of the Rule against Plaintiffs' dormant Commerce Clause claim.

In fact, Plaintiffs' reply arguments almost entirely reiterate their arguments supporting their motion for summary judgment. Accordingly, the Director has already briefed each of these issues to the Court, and that legal argument will not be repeated in this Reply Memorandum. Rather, the Director incorporates by reference part IV.B of his memorandum in support of his motion for summary judgment. (Doc. 36.)

### C. The Rule is not preempted because it is not inconsistent with the purposes and objectives behind the OFPA.

#### 1. The Rule does not conflict with the OFPA because it does not hinder organic producers and sellers from informing consumers about the materials used in organic production.

OTA concedes that compliance with the OFPA and the Ohio Rule is physically possible. Thus, the only conflict preemption issue left to be decided is whether the Rule stands as an obstacle to the accomplishment of the full purposes and objectives of the OFPA.

The Rule does not frustrate or obstruct any OFPA objectives. OTA cites no OFPA or NOP standard that addresses rbST-labeling claims on organic dairy products.

9

The Rule in no way restricts organic producers' and sellers' use of the "organic" label on dairy products or from informing consumers what materials are used in organic production. Contrary to OTA's characterization of the Rule's milk production labeling provisions as "extreme limitations," the Rule does not hinder organic producers and sellers from informing consumers that their "milk is from cows not supplemented with rbST." Ohio Admin.Code § 901:11-8-01(B). The additional labeling requirements in that provision do not diminish the informative nature of the no-rbST organic production claim. Rather, they simply inform the consumer about the FDA finding that there is no significant difference shown between milk from rbST-supplemented and non-rbST-supplemented cows. *Id.* § 901:11-8-01(B)(2). Requiring such additional information poses no clear obstacle to OFPA and NOP standards, and furthers Ohio's strong interest in protecting consumers from false and misleading labeling of dairy products.

OTA cites the OFPA's legislative history which encourages the organic industry "to inform consumers about *all materials used* in organic production." (OTA Memo. [Doc. 29] p.6 n.2 (quoting S.R. REP. NO. 101-357 at 300 (1990)) (emphasis added). OTA then tries to extend the legislative history one step further to include informing consumers of substances absent from organic production. The Rule does not conflict with Congress's intent because its provisions for milk composition claims only prohibit the false and misleading labeling of certain materials that are *not used* in organic production. *Id.* § 901:11-8-01(C)-(D). Although the provisions are prohibitory, they do not prohibit the producer or retailer from informing consumers about what materials are in organic milk. OTA does not show that the Rule, as applied to organic production, unconstitutionally conflicts with the OFPA.

2. **OTA does not show that Congress intended the OFPA to leave no room for States to exercise their traditional police powers to protect consumers against false and misleading labeling of dairy products.**

While OTA insists that it does not contend that OFPA prevents Ohio from regulating false and misleading food labeling generally, it does argue that Ohio is powerless to regulate false and misleading food labeling on organic products because of the OFPA's comprehensive regulatory scheme. While the OFPA prohibits the use of certain hormones and chemicals in organic production, OTA does not cite anything in the OFPA or NOP regulations that show there is no room for States to exercise their traditional police powers to regulate false and misleading labeling. *Cf., e.g., State Farm Bank, F.S.B. v. Reardon*, 2008 U.S. App. Lexis 18027 (6th Cir. Aug. 22, 2008) (holding that federal administrative regulations specifically provide that the Office of Thrift Supervision "occupies the entire field of lending regulation for federal savings associations," and identify specific types of state laws that are and are not preempted).

To support its field preemption argument, OTA refers to *Campbell v. Hussey*, 268 U.S. 297 (1961), which held the federal Tobacco Inspection Act ("TIA") did preempt a state tobacco-labeling law. In *Campbell*, the Court found the TIA left no room for any supplementary State regulation concerning the types of tobacco at auction. 268 U.S. at 301. OTA argues that the OFPA is analogous to the TIA, and thus the Ohio Rule is preempted. In *Fla. Lime & Avocado Growers*, 373 U.S. 132 (1963), the Supreme Court distinguished the TIA from a California statute that prohibited the in-state transportation or sale of avocados with less than 8% oil. The Court noted:

> Had Congress meant the Act to have in addition a pervasive effect upon the ultimate distribution and sale of produce, evidence of such a design would presumably have accompanied the statute, as it did the Tobacco Inspection Act,

11

> see Campbell v. Hussey, supra. *In the absence of any such manifestations, it would be unreasonable to infer that Congress delegated to the growers in a particular region the authority to deprive the States of their traditional power to enforce otherwise valid regulations designed for the protection of consumers.*

*Id.* at 150 (emphasis added).

OTA stresses that the OFPA calls for national standards governing the marketing of organically produced products, but does not point to any OFPA or NOP provision that addresses false or misleading dairy labeling. And while OTA even insists that the OFPA does not preempt State laws concerning false or misleading dairy labels, OTA in effect argues that the OFPA does preempt State laws on false or misleading dairy labeling on organic products. It is unlikely Congress meant the OFPA to be so sweeping as to leave no room for States to exercise their traditional police powers to protect consumers against such labeling on dairy products. Therefore, OTA's field preemption claim fails because the Ohio Rule is unlike the state statute invalidated in *Campbell*.

### D. The Rule is not vague because its uses the word "may" in conjunction with conditions specified therein.

OTA stretches its void for vagueness argument by insisting that the Rule must be construed to permit arbitrary enforcement by the Director on milk production claims. That argument, however, ignores the remaining text of the Rule which sets forth exceptions therein. The Rule provides that a dairy label with a production claim that "this milk is from cows not supplemented with rbST" may be considered misleading *unless* (1) the labeler has verified the claim is accurate and made supporting documents available for inspection, and (2) the label contains, in the same font, style, case and color and at least half the size the additional statement that "The FDA has determined that no significant difference has been shown between milk derived from rbST-supplemented

cows and non-rbST-supplemented supplemented cows." Ohio Admin.Code § 901:11-8-01(B)(1)-(2) (emphasis added). The Rule also provides that label statements "may be considered to be false or misleading *if* they indicate the absence of a compound not permitted by the United States Food and Drug Administration to be present in any dairy product . . . ." *Id.* § 901:11-8-01(D) (emphasis added).

The Rule's use of the word "may" in conjunction with the words "unless" and "if" is significant, indicating that the specified claim will be considered false or misleading unless the conditions specified thereafter are met. This is a fair construction of the provisions that avoids any constitutional problem associated with discriminatory enforcement that OTA claims the Rule allows. To the extent there is any ambiguity, this Court should defer to ODA's interpretation of its own Rule if such an interpretation is reasonable and not clearly erroneous or inconsistent with the Rule. *HUD Tenants Coalition v. United States Dep't of Housing & Urban Dev.*, 274 Fed. Appx. 124, 127 (3d Cir. 2008) (holding it was appropriate for the district court to defer to a state agency's reasonable interpretations of its own regulations); *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507 (2d Cir. 2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation is arbitrary or capricious.").

OTA also tries to support its vagueness claim by citing to a deposition statement by Director Boggs that it would ultimately be his decision upon the advice of counsel and his dairy chief whether a particular statement would be false or misleading. His testimony does not suggest selective enforcement; it means that as the Director of ODA he is empowered to enforce the Rule, which he would do after consulting with counsel and his dairy chief.

13

Finally, OTA complains that the Rule is not definite enough because it potentially implicates First Amendment rights. However, for the reasons set forth in this Reply and in ODA's Memorandum in Support of its Motion for Summary Judgment, the Rule's use of the word "may" is neither vague nor suggests arbitrary or selective enforcement. Accordingly, ODA is entitled to summary judgment on OTA's void for vagueness claim.

## III. CONCLUSION

Accordingly, the Director's motion for summary judgment should be granted, while Plaintiffs' motions for summary judgment should be denied.

Respectfully submitted:

NANCY H. ROGERS
Attorney General of Ohio


s/ William J. Cole
JAMES R. PATTERSON (0024538)
Senior Assistant Attorney General
8995 East Main Street, Legal Dept.
Reynoldsburg, Ohio 43068
614.728.6430
jpatterson@agri.ohio.gov
Trial Attorney for Defendant

WILLIAM J. COLE (0067778)
Senior Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
(614) 466-2980
wcole@ag.state.oh.us
Co-Counsel for Defendant

# CERTIFICATE OF SERVICE

I certify that on September 29, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF recipients.

s/ William J. Cole
WILLIAM J. COLE